IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **TOOLGAL USA CORP.**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 13 C 6960 |
| | ) |
| **DIAMOND BLADE WAREHOUSE, INC.**, | ) |
| an Illinois corporation, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Toolgal USA Corp. ("Toolgal") has moved for summary judgment on its complaint against Diamond Blade Warehouse, Inc. ("Diamond Blade"),[1] seeking a fully-supported judgment of $313,927.36. Diamond Blade has now responded, so that the motion is ripe for decision. For the reasons stated in this memorandum opinion and order ("Opinion"), Toolgal's motion is granted and is accompanied by a Fed. R. Civ. P. ("Rule") 54(b) determination.

Diamond Blade's response could scarcely be farther from the typical Rule 56 opposition: It does not dispute the facts that it purchased the claimed number of Toolgal's products at their claimed purchase price (uncontroverted facts in light of Toolgal's detailed invoices and the total absence of any quarrel on that score from Diamond Blade). Indeed, Diamond Blade's Introduction section at the outset of its Response in Opposition states candidly:

---

[1] This Court recognizes that Diamond Blade's Response styles itself as "DBW" and speaks of Toolgal as "TUSA," instead of referring to the parties by their proper names -- or as this Court has done, by employing abbreviated versions that use words in the English language. This Court has long preferred to avoid such alphabet-soup designations, which are particularly annoying when multiple parties employ them so that you can't tell the players without a score card. There are of course exceptions, as when alphabet-soup abbreviations or acronyms have found their way into universal usage (as is the case with such familiar examples as NLRB or SEC or AT&T).

> After careful review of its records, DBW does not dispute that it owes TUSA
> money for the goods delivered, as set forth in TUSA's Complaint.

And that acknowledgement is all of a piece with Diamond Blade's Response to Toolgal's LR56.1(a) statement of undisputed material facts, a Response that lists that and all other Toolgal LR 56.1(a) statements as "Undisputed."

Nor does Diamond Blade dispute that it used those products for resale to its own customers: Its own LR 56.1(b) statement of assertedly undisputed material facts states in part in its paragraph 2:

> From prior to 2007 until 2013, DBW sold a substantial volume of TUSA products
> to DBW's customers in the construction industry.

And nothing in Diamond Blade's presentation even suggests that such resale of Toolgal's products did not continue to take place after the parties entered into an arrangement under which Toolgal stored part of its inventory in Diamond Blade's warehouse. It seems that the only thing that Diamond Blade did not seek to market and sell was its formula for creating an extraordinary profit margin by the entire elimination of cost of goods sold as an expense as the result of stiffing its supplier Toolgal.

But what has been said to this point admittedly oversimplifies global matters somewhat, because Diamond Blade's "defense" to the granting of summary judgment is to attempt a shift of focus to its own hotly contested First Amended Counterclaim ("FAC") -- a contest stemming from the convoluted and fluidly shifting relationships among the parties and with their sometime joint venture Diamond Chain International, LLC. As Diamond Blade would have it, no Rule 54(b) determination should be made as to Toolgal's undisputed claim for goods sold and delivered, causing that entitlement to be held hostage -- because it would be rendered uncollectable for lack of an enforceable judgment -- until those interrelationships are sorted out.

Tellingly, Diamond Blade makes no pretensions that its FAC is itself even potentially susceptible to its own Rule 56 motion. Instead, as Diamond Blade would have it, Toolgal would be required to hold an unbankable and nonnegotiable piece of paper reading simply that it is entitled to the payment of $313,927.36 from Diamond Blade, while Diamond Blade continues to sit comfortably ensconced with the profits from its resale of Tool's products until the tangled web portrayed in its FAC and in Toolgal's Answer and Affirmative Defenses to that FAC can be unraveled through discovery and an eventual trial.

That notion of Toolgal being held hostage, even though the account receivable that stems from its sales and Diamond Blade's nonpayment is totally undisputed, is indefensible. Instead the scenario presented here is precisely the purpose for which potential Rule 54(b) determinations of finality were conceived.

To be sure, a little under a month ago (on January 13) this Court stated its disinclination to move in the direction of a Rule 54(b) determination (an excerpt from the transcript of proceedings on that date is quoted by Diamond Blade at page 7 of its responsive memorandum). But that view was carefully qualified by this Court's statement of an essential condition -- "if what is said on behalf of defendant is true" -- and a totally different light has been cast on the matter by Toolgal's two-weeks-later filing (on January 27) of its Answer and Affirmative Defenses to Diamond Blade's FAC.

It should be emphasized that this Court neither makes nor implies any determinations in favor of either litigant on the substance or the merits of Diamond Blade's claims (as stated earlier, no hint of a current resolution of the parties' vigorously contested positions is sought or urged by either side). What has emerged instead is that Toolgal's Complaint and Diamond Blade's FAC are not "inextricably intertwined," as Diamond Blade would have it -- it is rather

(1) that the parties are poles apart on the issues posed by Diamond Blade, (2) that Diamond Blade's contention of its entitlement to a major set-off has been met head-on by Toolgal's response and (3) that Toolgal's entitlement to payment for its products is a discrete claim that has been stalled far too long by Diamond Blade's stonewalling.

## **Conclusion**

In sum, there is no genuine issue as to any material fact bearing on Toolgal's goods-sold-and-delivered claim. Accordingly Toolgal is entitled to a judgment against Diamond Blade for $313,927.36 as a matter of law, and this Court orders the immediate entry of such a judgment. Finally, in accordance with Rule 54(b), this Court expressly determines that there is no just reason for delay and accordingly directs entry of a final judgment in that respect.

                                                                             _____
                                                                             Milton I. Shadur
                                                                             Senior United States District Judge
Date: February 7, 2014